Joseph S. Freeland v. Commissioner. Joseph S. Freeland and Murray M. Freeland v. Commissioner.
Freeland v. Commissioner
Docket Nos. 77836, 83317.
United States Tax Court
T.C. Memo 1960-258; 1960 Tax Ct. Memo LEXIS 34; 19 T.C.M. (CCH) 1460; T.C.M. (RIA) 60258; November 30, 1960
*34 Pursuant to paragraph 10 of their separation agreement, petitioner's former wife conveyed her interest in certain real property to petitioner in exchange for a promissory note under which petitioner promised to pay her the sum of $24,000 in 120 equal monthly installments of $200, "said monthly installments being inclusive of interest at the rate of six per cent per annum upon the unpaid principal balances of the indebtedness." Held, payments under the promissory note did not constitute periodic payments within the meaning of section 71(a), Internal Revenue Code of 1954, and are not deductible by petitioner under section 215. Held further, that amount of petitioner's payments which represents interest at the specified rate is properly deductible as interest on an indebtedness under section 163. Arthur Clark, Jr., Esq., for the respondent. BRUCE Memorandum Opinion BRUCE, Judge: These proceedings involve deficiencies in the Federal income tax of the petitioners as follows: Petitioner
Dkt. No.
Year
Deficiency
Joseph S. Freeland
77836
1956 $352
Joseph S. Freeland
and Murray M.
Freeland
83317
1957
528 The issues presented are: (1) whether certain monthly payments made by petitioner, Joseph S. Freeland, *35 to his former wife, Cordelia Freeland, in 1956 and 1957, are deductible as periodic payments under the provisions of sections 215 and 71, Internal Revenue Code of 1954; [1] and (2) in the alternative, whether any portion of such payments is deductible as interest under section 163. These two proceedings have been submitted on common stipulations of facts and for purposes hereof shall be considered as having been consolidated for opinion. The stipulated facts are so found and the stipulations, together with exhibits attached thereto, are incorporated herein by this reference. Joseph S. Freeland and Murray M. Freeland, husband and wife, reside in Paducah, Kentucky. Joseph S. Freeland, hereinafter referred to as petitioner, filed an individual Federal income tax return for the year 1956 with the district director of internal revenue for the district of Kentucky. Petitioner and Murray M. Freeland filed a joint Federal income tax return for the year 1957 with the district director of internal revenue for the district of Kentucky. On April 20, 1956, the petitioner and his then wife, Cordelia *36 Freeland, hereinafter referred to as Cordelia, executed a separation agreement wherein it was provided: * * *
1. Second party is to have the care, custody and control of Joseph C. Freeland, David S. Freeland and Mary Cordelia Freeland, the children of the parties, who are eighteen, fourteen and nine years of age, respectively, subject to the approval of any court of competent jurisdiction of the parties and subject matter in the event any action for divorce is hereafter brought by either of said parties and subject to and until the further orders of such court or of any other court of competent jurisdiction; and subject also to the right of first party to see and visit with said children and to have said children see and visit with him at reasonable intervals, times and places. 2. From and after the first day of May, 1956, first party shall pay to second party for the support and maintenance of the said three children and for her own support and maintenance the sum of Three Hundred Dollars ($300.00) per month, which shall be due and payable in advance on the first day of each month thereafter for the remainder of the lifetime of second party or until the death of first party, whichever *37 first occurs, subject, however, to the provisions of this agreement hereinafter contained. 3. In the event of the remarriage of the party of the second part, the amount thus payable by first party shall be reduced by one-third (or One Hundred Dollars per month) as and when each of said children reaches his or her majority and is either self-supporting or has finished his or her college and/or professional education, whichever first occurs, or in the further event of the death of any of said children before the occurrence of any of said events. 4. Until the youngest of said children reaches the age of majority and is either self-supporting or has completed his or her college and/or professional education, whichever first occurs, one-half of all amounts received by second party in gainful employment (after deduction of required contributions for retirement benefits or social security benefits) or by way of pension, retirement benefits, social security benefits, unemployment compensation or similar income, but not to exceed in all One Thousand Eight Hundred Dollars ($1,800.00) per annum, shall be credited as received against the obligations herein undertaken by first party; and in the *38 event of a reduction in the amount of such obligations under the provisions of Paragraph 3 hereof, the amount for which such credit shall be given first party shall be proportionately reduced. 5. After the youngest of said children shall have attained his or her majority, and is either self-supporting or has completed his or her college and/or professional education, whichever first occurs, all of such income received by second party shall be credited against first party's obligations hereunder. 6. Second party shall in no event be required to work, but agrees that from and after September 1, 1957, she will make reasonable efforts in good faith to obtain and retain such employment as shall be suitable to her talents, her education and the condition of her health, during such time as the obligations of first party hereunder shall continue. 7. First party further agrees, in addition to the undertakings hereinbefore recited, to: - a. Assume all unusual medical and hospital expense chargeable to any serious or extended illness suffered by any of the children during their minority or by second party prior to her remarriage. b. Maintain in force until their respective majorities the life *39 insurance now in effect upon the lives of the three children and to transfer said policies, with cash values and other life benefits intact, to each insured as the latter becomes of age. c. Defray the reasonable expense of a college education, including one complete course of professional education, if desired, for each of the three children. First party reserves the right to have a voice in the selection of such course of study and such educational institution as any of the children may select. 8. To provide further for the support and education of said children in the event of the death of first party, first party agrees that he will cause all of his now existing life insurance (of which second party is now the beneficiary) in the total amount of Fourteen Thousand Five Hundred Dollars ($14,500.00) to be made payable to the said three children equally, and will maintain said insurance in force for the pro rata benefit of said three children until each of them respectively completes his or her education. 9. First party agrees that he will forthwith transfer to second party, free and clear of all encumbrances, the title to the 1955 model Plymouth automobile which is now in her possession; *40 and that second party may retain as her own absolute property all of the household goods and furnishings and other contents of the home heretofore occupied by the parties, with the exception of the books and tools, which the parties shall divide by mutual agreement. 10. Second party agrees that she will forthwith convey to first party, free of all encumbrances, all of her right, title and interest in and to the real estate owned by the parties and heretofore occupied by them as their home, consisting of a residence and approximately two acres of ground located on the Blandville Road near Paducah, Kentucky. Simultaneously with said conveyance, first party agrees that he will execute and deliver to second party a good and sufficient promissory note, secured by a first and superior mortgage lien against said property, obligating himself to pay to the order of second party the sum of Two Hundred Dollars ($200.00) per month for the period of ten years from the date of May 1, 1956, inclusive of principal and interest. 1. In the event that first party fails to pay said note indebtedness in accordance with its terms, and as a result thereof second party through foreclosure proceedings or otherwise *41 acquires title to said property, then during such time as second party continues to remain the owner of said property first party shall not be entitled to the credit mentioned in Paragraph 4 of this agreement. 12. In consideration of the foregoing undertakings on the part of first party, the second party hereby releases first party from any and all other or further obligations of support or maintenance for herself than those set forth in this instrument, and she does further release and relinquish unto first party, his heirs, executors, administrators and assigns, all rights or claims by way of dower, homestead, inheritance or descent, in and to any real property which first party now owns or may hereafter acquire, and any and all rights to a distributive share of his personal estate now owned or hereafter acquired, and any and all other rights and claims of every kind and nature arising or growing out of the marital relationship of said parties. She further agrees that she will not, in any manner, incur or contract any debts on the credit of first party and will not incur any liabilities in his name or on his behalf; and she waives, releases and relinquishes any and all claims by *42 way of alimony (except for the provisions contained in this instrument) either temporary or permanent. During the continued marriage of the parties the second party agrees to sign any and all papers necessary to the economic transaction of first party's business. 13. First party, in consideration of said undertakings by second party, does hereby release and relinquish unto second party, her heirs, executors, administrators and assigns, all rights and claims of dower, curtesy, inheritance, descent, distribution, and any and all other rights or claims in any manner arising or growing out of the marital relationship of said parties, in and to the estate of second party, whether real or personal, now owned or hereafter acquired, and to any property given to second party by the terms of this agreement; but by these presents first party shall be forever barred therefrom. 14. It is further agreed by and between the parties hereto that the provisions of this instrument shall, by agreement of the parties, be made a part of any judgment rendered in any action for divorce hereafter brought by either of them against the other. * * *
During the property settlement negotiations between the petitioner *43 and Cordelia, which culminated in the execution of the separation agreement, the petitioner had proposed to convey to Cordelia his interest in the family home in Paducah. However, Cordelia refused to take the property and instead insisted upon being paid the $300 per month required under paragraph 2 of the separation agreement, and an additional $24,000 to be paid at $200 per month over a period of 10 years. She agreed that the petitioner could keep the property and give her a mortgage on it as security for the payment of the $24,000. This is what was finally agreed upon, resulting in the inclusion of paragraph 10 of the separation agreement. In compliance with the provisions of paragraph 10 of the separation agreement, Cordelia executed and delivered to the petitioner a deed wherein she conveyed to the petitioner all of her interest in said real property. [2] *45 Simultaneously with the execution of said deed on April 20, 1956, petitioner executed and delivered to Cordelia a promissory note in which it was provided: For value received, I promise to pay to the order of Cordelia Freeland the sum of Twenty-four Thousand Dollars ($24,000.00) in lawful currency of the United States of America, *44 in 120 equal monthly installments of Two Hundred Dollars ($200.00) each, the first of said installments being due and payable on or before the first day of May, 1956, with a like installment falling due on or before the same day of each and every successive month thereafter until the said sum of Twenty-four Thousand Dollars ($24,000.00) shall have been fully paid, said monthly payments being inclusive of interest at the rate of six per cent per annum upon the unpaid principal balances of the indebtedness evidenced by this note. It is understood and agreed that in the event of failure on the part of the maker hereof to pay any installment hereof within ninety (90) days after the due date of same, the holder of this note may declare the entire indebtedness due and payable and proceed at law or in equity to collect the same. This note is secured by a mortgage of even date herewith, conveying in mortgage certain real property situated on the Blandville Road, near Paducah, McCracken County, Kentucky, and each and all of the terms, provisions and stipulations of said mortgage are made a part hereof as though set forth at length herein. Simultaneously with the execution of said deed and note, the petitioner also executed and delivered to Cordelia a mortgage on the said real estate securing the payment of said promissory note. On May 11, 1956, the Circuit Court of McCracken County, Kentucky, entered a judgment of divorce upon Cordelia's complaint against the petitioner. The terms of the separation agreement executed on April 20, 1956, were approved and made a part of said judgment. In addition to the amounts paid by petitioner pursuant to paragraph 2 of the separation agreement of April 20, 1956, petitioner paid to Cordelia in 1956 the aggregate sum of $1,600 in equal monthly installments of $200 commencing on May 1, 1956, as provided for by paragraph 10 of the said separation agreement and the promissory note. In addition to the amounts paid by petitioner in compliance with paragraph 2 of said separation agreement, petitioner paid to Cordelia in 1957 the aggregate amount *46 of $2,400 in equal monthly installments of $200, as provided for by paragraph 10 of the said separation agreement and the promissory note. In his income tax return for the year 1956 petitioner deducted the sum of $1,600, which he paid to Cordelia in said year. In their income tax return for the year 1957 petitioner and Murray M. Freeland deducted the sum of $2,400, which sum petitioner paid to Cordelia in said year. The issues raised in this case concern the deductibility of certain monthly payments made by petitioner to his former wife under a promissory note which was executed pursuant to paragraph 10 of their separation agreement. Petitioner contends that the payments constitute "periodic payments * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is * * * incurred by the husband * * * under a written instrument incident to * * * divorce or separation" within the meaning of section 71(a), [3] *48 Internal Revenue Code of 1954, and are therefore deductible in their entirety by the petitioners under section 215. [4] Alternatively, petitioner contends that even if the payments in question do not constitute periodic payments within the meaning *47 of section 71(a), a portion thereof is deductible under section 163, [5] as interest on an indebtedness. The first issue presents the question of whether or not the payments were in discharge of a "legal obligation" which was incurred "because of the marital or family relationship" within the meaning of section 71(a)(1), or whether said payments were made as consideration for the property which his former wife conveyed to petitioner. The facts point to the latter conclusion. It is clear that the payments under the promissory note which was executed pursuant to paragraph 10 of the separation agreement are not for his former wife's support or in the nature of alimony or in lieu of alimony. Neither *49 the note nor paragraph 10 of the separation agreement indicates in any way that payments under the note were for support or alimony. In fact, petitioner's obligation for the "support and maintenance of his wife and children" was separately stated under paragraphs 2 to 8, inclusive, of the separation agreement. That obligation is separate and distinct from the obligation established by paragraph 10 and the related promissory note and the payments thereunder are not here in issue. The circumstances which culminated in the inclusion of paragraph 10 in the separation agreement and the terms of the said paragraph and of the related promissory note and mortgage indicate that paragraph 10 involves the settlement of property rights and not the wife's right to alimony or support. Accordingly, we hold that payments under the promissory note did not constitute periodic payments within the meaning of section 71(a) and are not deductible by petitioner under section 215. Cf. John Sidney Thompson, 22 T.C. 275. Even assuming arguendo that the payments could be considered as arising out of the marital or family relationship, they would not constitute deductible periodic payments under section 71, *50 since under section 71(c), [6] *51 only installment payments discharging a principal sum over a period of more than 10 years are deductible. The payments involved in the instant case are payable over a period of less than 10 years from the dates of both the separation agreement and the divorce decree. The agreement and related instruments were all executed on April 20, 1956. The divorce decree was entered on May 11, 1956. The initial payment on the obligation was due to be made on or before May 1, 1956, and the 120th or final payment will be due on or before April 1, 1966, which is 20 days less than 10 years from the date of the agreement and 41 days less than 10 years from the entry of the decree of divorce. Alternatively, petitioner seeks to deduct a portion of the payments to his former wife as interest under section 163. We think he is entitled to such a deduction. As indicated in our holding above, the payments in question were in discharge of the promissory note. This was a genuine indebtedness payable at all events without regard to the death, remarriage, or change of economic status of either of the parties, and enforceable in the event of default by a foreclosure action on the note and mortgage. Both the promissory note and paragraph *52 10 of the separation agreement, in compliance with which the note was executed, provided that the monthly payments of $200 should be inclusive of both principal and interest. The note provided that such interest should be "at the rate of six per cent per annum upon the unpaid principal balances of the indebtedness evidenced by this note." We hold that a part of each of said monthly payments, the amount of which may be computed under Rule 50, constitutes interest deductible under section 163. Decisions will be entered under Rule 50. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, except as otherwise indicated.↩
2. In this connection, it is noted from the derivation of title recited in the mortgage, hereinafter mentioned, that Cordelia had an undivided one-half interest in the real property by virtue of a deed, dated October 6, 1948, transferring such property to Joseph S. Freeland and Cordelia Freeland jointly.
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. * * *↩
4. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *↩
5. SEC. 163. INTEREST. (a) General Rule. - There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. * * *↩
6. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * *
(c) Principal Sum Paid in Installments. - (1) General rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as period payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.